| | |
|---|---|
| JEFFREY DAVIS, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **ORDER** |
| ) | |
| UNITED STATES DEPARTMENT OF ) | |
| DEFENSE, ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**THIS MATTER** is before the Court on the parties' cross motions for summary judgment (Doc. Nos. 22, 27, 28, 29, 32, 33, 34, & 35). For the following reasons, the Court will grant in part and deny in part Plaintiff's motion and will grant in part and deny in part Defendant's motion.

## I. BACKGROUND

 Mr. Mane Shaman al-Habardi, also known as Manei al-Oteibi ("al-Habardi"), was a Saudi national who was detained by the United States Department of Defense ("Defendant" or "DoD") at the Guantanamo Bay Naval Base in Cuba ("Guantanamo") as an enemy combatant some time during late 2001 or early 2002. On June 10, 2006, after having gone on hunger strike on multiple occasions during his detainment, al-Habardi committed suicide. On May 31, 2007, Plaintiff, Mr. Jeffrey Davis, submitted a Freedom of Information Act ("FOIA") request to DoD's Office of Freedom of Information ("DoD OFI") seeking:

> All documents, including photographs, video tapes, memos and emails, related in
> any way to the imprisonment at Guantanamo of Mane Shaman al-Habardi, also
> known as Manei al-Oteibi, whose ISN at Guantanamo was 588, as well as all
> documents, photographs, video tapes, memos and emails related in any way to his
> death at Guantanamo in 2006.

On August 17, 2007, the Naval Criminal Investigative Service ("NCIS") issued a denial of

Plaintiff's request, allegedly citing an ongoing investigation as the reason for the denial. Plaintiff appealed this determination on September 24, 2007, to the Department of the Navy, Office of the Judge Advocate General. After more than twenty days had elapsed after filing the appeal, Plaintiff timely filed this action.

After the litigation ensued, DoD OFI tasked the following DoD components to search for documents responsive to Davis's request: NCIS; the Joint Task Force - Guantanamo Bay ("JTF-GTMO") through the U.S. Southern Command; the DoD Office of General Counsel ("OGC"); the Office of the Assistant Secretary of Defense for Detainee Affairs ("ODA"); the Criminal Investigation Task Force ("CITF"); the Office for the Administrative Review of the Detention of Enemy Combatants ("OARDEC"); and the Armed Forces Institute of Pathology through the Army Medical Command/Office of the Surgeon General ("OSG/MEDCOM"). The United States Central Command ("USCENTCOM") and the Army's Intelligence and Security Command ("INSCOM") reviewed documents that were referred to them by other DoD components. In addition, two outside agencies were referred responsive records that either originated from them or contained information that originated from them: the Department of State and the FBI.

After providing Plaintiff with over four thousand pages of documents in response to his request, DoD moved for summary judgment. Attached to its motion were numerous supporting declarations from officials representing the various governmental components that searched for records in relation to Plaintiff's FOIA request. Most of the declarations contained detailed <u>Vaughan</u>

indexes[1] documenting information that was being withheld and the FOIA exemptions that allowed the government to withhold the information.

There were five JTF-GTMO components that conducted searches in response to Plaintiff's FOIA request: the Joing Detention Group ("JDG"), the Joint Intelligence Group ("JIG"), the Joint Medical Group ("JMG"), J3, and the Staff Judge Advocate ("SJA"). DoD attached to its Motion for Summary Judgment the Declaration of Rear Admiral David M. Thomas, Jr. ("Thomas Declaration"), which describes the searches conducted by the JDG, JIG, and JMG. Each description generally consists of (1) the type of file system searched (hard-copy or electronic), (2) the number of records found responsive to Plaintiff's request and the number withheld, if any, (3) the search terms used,[2] and (4) a general statement that the particular files were searched "because they were the locations where records related to the request were reasonably expected to be found." (Doc. No. 22-7 at ¶¶ 7-9). For example, it states regarding the JDG and JMG searches that "[t]he hard files were searched because they were the locations where records related to the request were reasonably expected to be found." (Id. at ¶¶ 7, 9). When conducting their respective searches, JDG and JMG searched only hard-copy files, and JIG searched only electronic files.

DoD also provided the Declaration of Commander Don A. Martin ("Martin Declaration") as an attachment to Defendant's Reply in Support of Its Motion for Summary Judgment. (Doc. No. 33-2). The Martin Declaration makes clear that SJA was tasked with searching its records "because SJA would likely have records relating to the death of [al-Habardi]." (Id. at ¶ 5). It states that SJA

---

[1] A Vaughn index is a list describing the documents an agency withholds when responding to a FOIA request. It received its name from Vaughn v. Rosen, where the use of such an index was first discussed. 484 F.2d 820 (D.C. Cir. 1973).

[2] JIG searched for al-Habardi's name, known aliases, and ISN Number. JMG searched for al-Habardi's name and ISN Number. The Thomas Declaration does not disclose what search terms JDG used. (Doc No. 22-7 at ¶¶ 7-9).

searched only its hard-copy files for al-Habardi's name and ISN number and that it searched these files "because they were the locations where any responsive records were reasonably expected to be found." (Id. at ¶ 6). The Martin Declaration further states:

> The [JIG, JMG, and JDG] . . . searched the locations where any responsive records would be reasonably expected to be found. The JIG maintains electronic records; hence, the JIG searched for records related to ISN 588 in their electronic database. The JMG maintains hard-copy medical records; hence, the JMG searched for ISN 588's medical records in their hard-copy files. The JDG maintains its records in hard-copy files; hence, the JDG searched for ISN 588's detention records in their hard-copy files.

(Id. at ¶ 7).

Among the documents DoD provided to Plaintiff, numerous JMG documents relate to al-Habardi's medical treatment as a hunger striker. Al-Habardi was on hunger strike in July 2002, in October 2002, for most of the period between July 2005 and February 2006, in March 2006, and in May 2006. The JMG records reference nasogastric tube-feeding procedures used to nutritionally sustain al-Habardi upon his refusal to eat. These documents show that al-Habardi was physically restrained in order to accomplish the tube-feeding procedure. In each instance where the method of restraint is referenced in the medical records, it has been redacted. The Thomas Declaration states that in "isolated incidents" DoD claimed the (b)(2) high FOIA exemption regarding "information about how patients are secured during certain medical procedures." (Doc. No. 22-8 at ¶ 50).

Plaintiff has now acknowledged that he is "satisfied enough with Defendant's document production to decline to seek further information except as to three subjects: (1) hunger strike and force-feeding records as to al-Habardi, (2) records regarding counsel's visit to Guantanamo and attempt to visit his client, and (3) al-Habardi's CSRT and ARB records." (Doc. No. 34 at 1). Plaintiff also generally challenges the adequacy of the overall search by JTF-GTMO components JDG, JIG, JMG, and SJA. Finally, Plaintiff has acknowledged that Defendant has now produced

the CSRT and ARB records that Plaintiff had requested in his Motion for Summary Judgment and that this issue is now moot.  (Id. at 2).

## II.  STANDARD OF REVIEW

### A.  The Freedom of Information Act

"[P]ublic access to Government documents" is the "fundamental principle" underlying FOIA.  John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989).  It is based on the notion that citizens have a right to know "what their government is up to."  U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 773 (1989).  As a result, "disclosure, not secrecy, is the dominant objective of the Act."  U.S. Dep't of the Air Force v. Rose, 425 U.S. 352, 361 (1976).  Yet while disclosure is the dominant objective, Congress has recognized that "legitimate governmental and private interests could be harmed by release of certain types of information," and thus it laid out nine exemptions from producing information under FOIA.  FBI v. Abramson, 456 U.S. 615, 621 (1982); see 5 U.S.C. § 522(b).  "While these exemptions are to be 'narrowly construed,' courts must not fail to give them 'a meaningful reach and application.'"  Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice, 331 F.3d 918, 925 (D.C. Cir. 2003) (quoting Abramson, 456 U.S. at 630;  John Doe Agency, 493 U.S. at 152).

### B.  Summary Judgment

FOIA cases are typically decided at the summary judgment stage.  See Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citations omitted).  The Court will grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The movant has the "initial responsibility of informing the district court of the basis for

its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Once the movant meets this burden, the nonmoving party "must set forth specific facts" demonstrating that there is a material issue in dispute. Id. at 322 n.3.

"Materiality is, of course, a function of the applicable legal standard, which in this case is that 'an agency responding to a FOIA request must conduct a search reasonably calculated to uncover all relevant documents, and, if challenged, must demonstrate beyond material doubt that the search was reasonable.'" Kowalczyk v. U.S. Dep't of Justice, 73 F.3d 386, 388, 315 (D.D.C. 1996) (quoting Truitt v. U.S. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)). Where an agency declines to produce requested information under FOIA, federal district courts review the matter de novo. See 5 U.S.C. § 522(a)(4)(B); Al-Fayed v. C.I.A., 254 F.3d 300, 305, 308 (D.C. Cir. 2001). De novo review under FOIA requires the Court to "ascertain whether the agency has sustained its burden of demonstrating that the documents requested . . . are exempt from disclosure" under the Act. Johnson v. Executive Office for U.S. Attorneys, 310 F.3d 771, 774 (D.C. Cir. 2002) (citation omitted).

## III. DISCUSSION

### A. Issues in Dispute

Plaintiff has stated that he is satisfied as to DoD's production of documents regarding many of the issues formerly in dispute. The Court will therefore only consider the issues with which Plaintiff is still unsatisfied. The Court does not consider many of the issues argued in Defendant's Motion for Summary Judgment, Plaintiff's Response, and Defendant's Reply, since Plaintiff has

acknowledged by his statement that many of the issues are no longer in dispute.[3] Summary judgment will thus be granted to DoD on the issues no longer in dispute.

### B. Adequacy of the Searches for Records

Courts adhere to an established "guiding principle that . . . FOIA does not require a perfect search, only a reasonable one." Rein v. U.S. Patent & Trademark Office, 553 F.3d 353, 362 (4th Cir. 2009) (citation omitted). The issue to be resolved is not whether there might be any documents within the scope of the request that remain undiscovered, but whether the search for those documents was an adequate one. Weisberg v. U.S. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984). Thus "[t]here is no requirement that an agency search every record system." Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990). Courts conducting this inquiry grant agency affidavits a "presumption of good faith which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." SafeCard Services, Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted). Where there is no "countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA." Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982). Alternatively, where the responses of the agency "raise serious doubts as to the completeness of the search or are for some other reason unsatisfactory, summary judgment in the government's favor would usually be inappropriate." Id. (citation omitted).

### 1. Whether the declarations support the adequacy of the JTF-GTMO searches

---

[3] The issues no longer in dispute include the majority of DoD's application of specific FOIA exemptions to information it redacted or withheld completely, as well as the adequacy of the searches conducted by JTF-GTMO-J3, and the non-JTF-GTMO governmental components, which include CITF, OGC, ODA, OARDEC, USCENTCOM, NCIS, OSG-MEDCOM, DOD OFI, INSCOM, FBI, and State.

Plaintiff requested of DoD:

> All documents, including photographs, video tapes, memos and emails, related in any way to the imprisonment at Guantanamo of Mane Shaman al-Habardi, also known as Manei al-Oteibi, whose ISN at Guantanamo was 588, as well as all documents, photographs, video tapes, memos and emails related in any way to his death at Guantanamo in 2006.

(Doc. No. 1 at 2). DoD eventually produced thousands of pages of documents in response to the request. Plaintiff alleges, however, that the searches conducted by the various JTF-GTMO components were inadequate. Specifically, Plaintiff points to the following: JDG, JMG, and SJA searched only their hard-copy files, and JIG searched only its electronic files.

Plaintiff argues that limiting the search to one form of record system, whether electronic or hard copy, is improper under Oglesby. In Oglesby, the plaintiff challenged the adequacy of the State Department's search of its records in response to a FOIA request. 920 F.2d at 68. State submitted an affidavit that stated, "[b]ased upon the information contained in [plaintiff's] letter, and consistent with customary practice and established procedure, a search was initiated of the Department record system most likely to contain the information which had been requested . . . , namely, the Central Records." Id. The Oglesby court explained that while "[t]here is no requirement that an agency search every record system . . . , the agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested." Id. at 68. The court further noted, "It is not clear from State's affidavit that the Central Records system is the *only* possible place that responsive records are likely to be located. At the very least, State was required to explain in its affidavit that no other record system was likely to produce responsive documents." Id.

In the instant case, the declarations describing the JTF-GTMO components' searches of their records are insufficient to warrant summary judgment for DoD. The Thomas Declaration only vaguely describes the searches conducted by JDG, JIG, and JMG. Like the description in Oglesby,

in each of the three Thomas Declaration descriptions, DoD merely offers the same conclusory statement that the particular files were searched "because they were the locations where records related to the request were reasonably expected to be found." Id. Similarly, DoD's Declaration of Commander Don A. Martin sheds little light. The Martin Declaration does not state that the JIG has no hard-copy files, nor does it state that the JMG, JDG, and SJA have no electronic files. Neither declaration affirmatively mentions whether the JIG has hard-copy files, or whether the JMG, JDG, and SJA have any electronic files. Nor do they make clear whether the particular locations searched are the only places where responsive information is likely to be located. See Oglesby, 920 F.2d at 68; Cf. Ethyl Corp. v. EPA, 25 F.3d 1241, 1248 (4th Cir. 1994) (holding search inadequate where defendant queried only fifty-nine of the 100 employees involved in subject matter of a FOIA request). The affirmative statement that the JMG, for example, "maintains hard-copy medical records" says nothing about whether JMG does or does not have email or other electronic records. The Court cannot glean from such a statement whether there might be electronic systems, such as email servers, that could reasonably be expected to contain responsive information.[4] The Martin Declaration makes clear that SJA was tasked with searching its records "because SJA would likely have records relating to the death of [al-Habardi]." (Doc. No. 33-1 at ¶ 5). For such a high-profile occurrence, might there be emails among SJA, JDG, or other JTF-GTMO officials mentioning "al-

---

[4] Plaintiff challenges that JTF-GTMO did not search for photographs or videos, items specifically named in the FOIA request. However, certain photographs were located in JTF-GTMO's search, as indicated in the index of Detention Records for ISN 588, but these photographs were withheld under various FOIA exemptions. Still, it is unclear from the declarations and the indexes how any videos might be filed and whether such filing systems were searched by JTF-GTMO components. The more detailed declarations will need to shed light on this lack of clarity.

Habardi" or "ISN 588" concerning the detainee suicides?[5] The declarations fail to consider such a question.

The Thomas and Martin Declarations fail to demonstrate beyond material doubt that the search was "reasonably calculated to uncover all relevant documents" responsive to the request. See Kowalczyk, 73 F.3d at 388 ("[A]n agency responding to a FOIA request must conduct a search reasonably calculated to uncover all relevant documents, and, if challenged, must demonstrate beyond material doubt that the search was reasonable." (citation omitted)). While these declarations are entitled a presumption of good faith, without more, DoD has not met its burden on summary judgment regarding the reasonableness of JTF-GTMO's searches.

## 2. Whether the parameters of the searches were appropriate

Plaintiff alleges the JTF-GTMO components used "excessively limited search parameters" when they used only al-Habardi's name and ISN number in conducting their inquiries. (Doc. No. 34 at 11). Plaintiff argues that the FOIA "request was for 'all documents, including photographs, video tapes, memos and emails, related in any way' to al-Habardi" and that "[t]o search only for name and serial number assumes, without any proof being offered, that all emails and videotapes and the like 'related in any way' to al-Habardi would necessarily have his name or serial number associated with them." Id. Plaintiff ignores, however, that it would be extremely difficult, if not impossible, to locate all items "related in any way" to al-Habardi. To suggest that JTF-GTMO should have searched for information pertaining to al-Habardi that did not contain either his name or ISN number is unreasonable. A line must be drawn when responding to such a broad request, and

---

[5] For example, OGC, CITF, ODA, OTSG, and OFOI searched both electronic and hard-copy files and produced numerous emails to Plaintiff. See (Doc. Nos. 22-2 at ¶ 6; 22-3 at ¶ 6; 22-4 at ¶ 5; 22-15 at ¶ 6; 22-16 at Ex. 1; 34 at 6).

Plaintiff did not assist DoD in drawing this line when he used the phrase "related in any way" in his FOIA request. These search parameters were reasonably calculated to produce the requested information. See Oglesby, 920 F.2d at 68. Cf. Hall v. U.S. Dep't of Justice, 63 F. Supp. 2d 14, 17-18 (D.D.C. 1999) (finding that an agency need not search for records concerning the subject's husband even though such records might include a reference to the subject).

### 3. Plaintiff's more specific records requests on cross motion

Plaintiff requests that the Court order JTF-GTMO to perform further searches of its records for items Plaintiff believes should have been found based on his FOIA request. He seeks further information related to al-Habardi's treatment as a hunger striker and his alleged refusal to meet with his counsel in May 2006. Plaintiff also requests that DoD correct an administrative error, where it failed to produce the number of pages identified on JTF-GTMO-JIG's Vaughan index.

### a. Treatment of al-Habardi as a hunger striker

Plaintiff requests that the Court order JTF-GTMO to search all locations where records relating to al-Habardi's treatment as a hunger striker may reasonably be expected to be found, "including but not limited to force-feeding him by intravenous and naso-gastric tubes." (Doc. No. 34 at 4). Plaintiff seeks an order for the search not only of information with al-Habardi's name and ISN number as parameters, but also general information such as manuals, evaluations, directives, protocols, statistical analyses, and suggestions. The Court has already found the search terms consisting of al-Habardi's name and ISN number adequate. It is the adequacy of the search rather than the results of such a search to which the Court looks in making its determination. Rein v. U.S. Patent & Trademark Office, 553 F.3d 353, 362 (4th Cir. 2009) ("In judging the adequacy of an agency search for documents the relevant question is not whether every single potentially responsive document has been unearthed, but whether the agency has demonstrated that it has conducted a

search reasonably calculated to uncover all relevant documents.") (quoting <u>Ethyl Corp.</u>, 25 F.3d at 1246-47).  Because the search terms were adequate, the Court will not order a subsequent, broader search than was already conducted from a search-terms standpoint.  This decision does not foreclose the possibility, however, that JTF-GTMO components will uncover Plaintiff's requested information should they search the relevant hard copy or electronic records that they may have failed to previously search.

In addition, Plaintiff challenges why medical records pertaining to al-Habardi as a hunger striker were produced for some, but not all, periods where DoD has acknowledged al-Habardi was engaged in hunger strikes.[6]  The Court has the same question because the relevant declarations and index do not state the time-frame of the search parameters.  The Court will be in a better position to resolve questions such as these after receiving the more detailed and adequate declarations regarding the JDG, JIG, JMG, and SJA searches that this Order requires DoD to provide.

### b.  al-Habardi's alleged refusal to meet with counsel in May 2006

Plaintiff requests that the Court order JTF-GTMO to search all locations where records relating to al-Habardi's alleged refusal to meet with his counsel in May 2006 may reasonably be expected to be found.  Plaintiff wants JTF-GTMO to search "notes and memoranda of any transactions involving al-Habardi's counsel and guard mount messages and Detainee Information Management System entries and guard log book entries regarding the movements of al-Habardi in connection with the scheduled visit with his counsel."  (Doc. No. 34 at 4).  It is unclear from the record whether a search limited only to the JDG's hard-copy files would likely uncover all

---

[6] The Thomas Declaration states "The Government is providing ISN 588's medical records to Plaintiffs almost in their entirety," but it does not indicate why there would be records regarding only some, but not all, periods of al-Habardi's medical treatment as a hunger striker.  (Doc. No. 22-8 at ¶ 50).

references to al-Habardi or his ISN number. From the record, the Court cannot determine whether a log book would be in digital or hard-copy format, nor can it determine whether JDG or another JTF-GTMO component would retain such a record. As with Plaintiff's request for further information regarding al-Habardi's treatment as a hunger striker, the Court will not order a broader search than was already conducted from a search-terms standpoint. This decision does not foreclose the possibility, however, that JTF-GTMO components will uncover Plaintiff's requested information should they search the relevant hard copy or electronic records that they may have failed to previously search. The Court will be in a better position to resolve this question after receiving the more detailed and adequate declarations regarding the JDG, JIG, JMG, and SJA searches.[7]

### c. **Vaughn** index discrepancy

Plaintiff in his cross motion sought an order requiring JTF-GTMO to produce "the [41] pages identified on [JIG's] Vaughn index but not previously submitted . . . ." As DoD has explained, thirty-nine of the forty-one pages were intentionally withheld in their entirety based on a FOIA exemption, and the two missing pages were an administrative error that can be "easily corrected." (Doc. No. 33 at 7). Plaintiff now seeks an order requiring DoD to correct the administrative error and provide the two pages. This minor discrepancy has no bearing on the adequacy of the search from a legal perspective. See Piper v. U.S. Dep't of Justice, 294 F. Supp. 2d 16, 23-24 (D.D.C. 2003) (finding "gaps in the serialization of files" did not rebut the Government's presumption of good faith). Still, DoD should correct its error and provide the Plaintiff with the missing pages.

---

[7] Plaintiff further argues that the DoD has insufficiently explained why it did not release information on the procedures for taking prisoners to attorney visits. These procedures were not the subject of Plaintiff's FOIA request, and the Court does not consider the issue.

### C.  Records Containing Information about How Prisoners Are Secured

Plaintiff moves the Court to order that JTF-GTMO produce unredacted records "pertaining to information about how patients are secured during certain medical procedures. " (Doc. No. 34 at 2).  The Thomas Declaration states that the Government asserted a "(b)(2) high exemption pertaining to information about how patients are secured during certain medical procedures." Thomas Decl. ¶ 50.  Exemption 2 of FOIA protects from disclosure "matters that are . . . related solely to the internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).  What is often referred to as the "high 2" or "(b)(2) high" exemption pertains to information that, if released, would risk circumvention of agency regulations.  See Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir. 1992) (citation omitted).

"It is . . . well-established that the judiciary owes some measure of deference to the executive in cases implicating national security, a uniquely executive purview."  Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice, 331 F.3d 918, 926-27 (D.C. Cir. 2003) (citing Zadvydas v. Davis, 533 U.S. 678, 696 (2001) (noting that "terrorism or other special circumstances" might warrant "heightened deference to the judgments of the political branches"); U.S. Dep't of the Navy v. Egan, 484 U.S. 518, 530 (1988) ("[C]ourts traditionally have been reluctant to intrude upon the authority of the executive in military and national security affairs.")).  Both the Supreme Court and the Court of Appeals for the D.C. Circuit have explicitly recognized the importance of deference to the Executive in the context of FOIA claims that bear upon national security.  Id. (citing CIA v. Sims, 471 U.S. 159 (1985)).

### 1.  Adequacy of the explanation of exemption

Plaintiff first argues that DoD has not adequately explained why the (b)(2) high exemption applies to the restraint of detainees during certain medical procedures, in violation of Simmons v.

14

U.S. Dep't of Justice, 796 F.2d 709, 712 (4th Cir. 1986), and Founding Church of Scientology, Inc. v. Bell, 603 F.2d 945, 949 (D.C. Cir. 1979). The Fourth Circuit in Simmons upheld the FBI's claim of exemption when it "explained in detail" certain documents' classification and the importance of such classification. 796 F.2d at 712. The D.C. Circuit in Bell stated that an agency must explain why an exemption is relevant to the information it withholds. 603 F.2d at 949. It also stated that "the explanation of the exemption claim and the descriptions of withheld material need not be so detailed as to reveal that which the agency wishes to conceal, but they must be sufficiently specific to permit a reasoned judgment as to whether the material is actually exempt under FOIA." Id.

DoD has sufficiently explained why the (b)(2) high exemption applies. DoD has articulated that the manner in which hunger strikers are secured during involuntary feedings is a non-medical, security procedure. It argues that any more detailed explanation shedding light on the procedure would risk revealing the information that the exemption was intended to protect. It further contends that disclosure of this information would risk circumvention of those procedures by detainees and threaten the safety of the personnel and detainees involved. The Court accepts this argument, especially in light of the importance of deference to the Executive regarding an issue that bears upon national security. DoD's explanation is sufficiently specific as to allow a reasoned judgment of whether the exception applies, yet not so specific so as to reveal what DoD wishes to conceal. See id.

### 2. Whether DoD has failed to index or account for certain information

Plaintiff does not explicitly argue that the (b)(2) high exemption is inapplicable to the information as described.[8] He does, however, argue that DoD has failed to index or account for

---

[8] The Court finds nonetheless that the (b)(2) high exemption does apply to the procedure for securing hunger strikers during tube-feedings, because disclosure of this information would risk circumvention of those

some information that it withheld regarding the method for securing patients. (Doc. Nos. 27-2 at 4; 34 at 2). Specifically, Plaintiff points to the Thomas Declaration statement that in "isolated incidents" DoD claimed the (b)(2) high exemption regarding "information about how patients are secured during certain medical procedures." (Doc. No. 22-8 at ¶ 50). Plaintiff speculates that this statement may refer to an "infamous six-point chair," but he fails to substantiate his argument that DoD has failed to index information it withheld.

The Thomas Declaration refers to the information in question, and the JMG medical records contain numerous pages referring to the tube-feeding of al-Habardi, often with the only portion redacted indicating a (b)(2) high exemption where the method of restraint was named. Plaintiff alleges a "blanket refusal to produce and index relevant documents" by DoD, asserting that there are "acknowledged [in the Thomas Declaration] but unidentified records" that DoD has withheld regarding the restraint of detainees during tube-feeding procedures. This assertion is no more than an unsubstantiated conclusion. The Thomas Declaration states that DoD was asserting a (b)(2) high exemption regarding the method of securing patients during "certain medical procedures," presumably speaking of tube-feedings. While the Vaughan index provided by the JMG labels each item generically as a "medical record," it specifically indicates by page number to which medical records the (b)(2) high exemption was applied.[9] (Doc. No. 22-13). From this index, the Plaintiff could locate the relevant documents and see the actual redactions of references to the method of securing patients.

_____

procedures by detainees and threaten the safety of the personnel and detainees involved.

[9] Labeling the medical records otherwise would not have shed further light on whether they contained references to how patients were secured for tube-feeding procedures. These records are generally entitled "Medical Record" at the top and typically either indicate that they are "doctors' orders" or "progress notes."

That there may be undisclosed documents pertaining to restraint procedures that are within the parameters of the search conducted by the JMG or other JTF-GTMO components is mere speculation.[10]  Numerous medical records provided to the Plaintiff contain a redaction under the (b)(2) high exemption regarding the method of restraint.  It is to these redactions that the Thomas Declaration presumably refers, and the presumption of good faith accorded the declaration will not allow unsubstantiated speculation of wrongful withholding.

### 3. Whether DoD officially acknowledged the procedure in question

Although the Court finds that the (b)(2) high exemption applies to the method for securing patients during tube feedings, the inquiry does not end here.  "[W]hen information has been 'officially acknowledged,' its disclosure may be compelled even over an agency's otherwise valid exemption claim."  Fitzgibbon v. C.I.A., 911 F.2d 755, 765 (D.C. Cir. 1990) (citation omitted).  Courts apply a three-part test to determine whether information has been "officially acknowledged" by an agency.  See id. (citing Afshar v. U.S. Dep't of State, 702 F.2d 1125, 1133 (D.C. Cir. 1990)).  "First, the information requested must be as specific as the information previously released.  Second, the information requested must match the information previously disclosed . . . . Third, . . . the information requested must already have been made public through an official and documented

_____

[10] Plaintiff also argues that a "Tube Feeding Profile" was mentioned in one of the JMG documents but not produced.  There is no clear indication that such a profile, if it exists, would have turned up in a search based on al-Habardi's name and ISN number.  Morley v. C.I.A. is instructive on this point:

> [M]ere reference to other files does not establish the existence of documents that are relevant to appellant's FOIA request. If that were the case, an agency responding to FOIA requests might be forced to examine virtually every document in its files, following an interminable trail of cross-referenced documents like a chain letter winding its way through the mail. [ ] FOIA clearly does not impose this burden upon federal agencies . . . .

508 F.3d 1108, 1121 (D.C. Cir. 2007) (quoting Steinberg v. U.S. Dep't of Justice, 23 F.3d 548, 552 (D.C. Cir. 1994)).

disclosure." Id. (citing Afshar, 702 F.2d at 1133). Where information requested and withheld "is truly public, then enforcement of an exemption cannot fulfill its purposes." Cottone v. Reno, 193 F.3d 550, 554 (D.C. Cir. 1999) (quoting Niagara Mohawk Power Corp. v. U.S. Dep't of Energy, 169 F.3d 16, 19 (D.C. Cir. 1999)).

There is a question as to whether DoD has officially acknowledged the information it withheld regarding the securing of patients for tube-feeding purposes. In Al Joudi v. Bush, petitioners sought information related to Guantanamo detainees' medical treatment. No. 1:05-cv-301-GK (D.D.C) (filed Sept. 3, 2008) (Doc. Nos. 37, 41). In response to the motion, DoD attached as an exhibit to its brief the Declaration of John S. Edmondson, M.D. Id. (Doc. No. 48-2). Dr. Edmondson was the Commander of the U.S. Navy Hospital at Guantanamo, Task Force Surgeon for JTF-GTMO, and head of the Guantanamo detainee hospital. In the declaration, Dr. Edmondson sets forth in detail the procedures used for nasogastric tube feeding. Id. In addition, he discusses the use in limited circumstances of a "six-point restraint," a "four-point medical restraint," and a "two-point restraint, which would allow the detainee to remove the tube if he chose." Id. at ¶ 7. Dr. Edmondson further explains that "[w]hen any of these medical restraints are necessary, only soft Velcro restraints are used." Id.

DoD has not provided the Court with enough information to determine whether, under the three-part test for official acknowledgment, it officially acknowledged in the Edmondson Declaration the information that it withheld from Plaintiff regarding securing patients. As to part one of the test, the information in question is as specific as the information previously released, because both refer to a particular method of securing a patient for a tube-feeding procedure. As to part two, however, there is a question regarding whether the information withheld matches the information previously disclosed in the Edmondson Declaration. Without in camera review of the

relevant documents, the Court cannot determine this second part. The Court does note that from a time-frame perspective, the Edmondson Declaration, dated October 19, 2005, matches one of the periods in which al-Habardi was on hunger strike and treated at the same detention hospital. As to part three of the test for official acknowledgment, the information, if it matches that of the Edmondson Declaration, has been made public through an official and documented disclosure. The sworn declaration of the Navy Captain and supervising doctor at the JTF-GTMO detention hospital, offered by DoD in litigation and open to the public eye, is a disclosure that is both official and documented. See Cottone, 193 F.3d at 556 (holding FBI waived ability to withhold under exemption 3 wiretap audio tapes that it aired publicly in open court). Therefore, the Court will require DoD to provide it with unredacted JMG documents revealing the methods of restraint used on al-Habardi during tube-feeding procedures, so that the Court can determine in camera whether the information has been officially acknowledged in the Edmondson Declaration.[11]

## IV. CONCLUSION

The Court finds that the search terms used by JTF-GTMO, al-Habardi's name and ISN number, were reasonable and sufficient. Still, the Thomas and Martin Declarations are too vague to allow the Court to determine beyond material doubt that the searches were reasonably calculated to uncover all relevant documents responsive to the request. Thus additional, more detailed declarations are required regarding the JDG, JIG, JMG, and SJA searches. The Court will not order further searches focusing on al-Habardi as a hunger striker and the alleged refusal to meet with his

---

[11] The Court acknowledges that the form of the Edmondson Declaration, a sworn declaration attached to a legal brief, is different than that of the documents here, al-Habardi's medical records. However, if the information about securing patients has indeed been officially acknowledged previously, releasing the same information in a different form here would not risk circumvention of agency procedures, which is the justification for the (b)(2) high exemption. The true question is whether there is "specific information in the public domain that appears to duplicate that being withheld." Afshar, 702 F.2d at 1130.

counsel. The Court will require DoD to correct its administrative error and provide plaintiff with the missing JIG documents or an adequate showing as to why they should not be produced. The Court finds that DoD has adequately explained why the (b)(2) high exemption applies to the restraint of detainees during certain medical procedures and that it has appropriately indexed and accounted for this withheld information. Still, in camera review of the JMG documents referring to the method for securing patients is necessary to determine whether DoD has officially acknowledged the information.

    **IT IS, THEREFORE, ORDERED,** that Defendant's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**, and that Plaintiff's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**. That is:

1.    Defendant's Motion for Summary Judgment is **DENIED** as to the reasonableness of the JTF-GTMO searches and the withholding of information referring to the method for securing patients during certain medical procedures;

2.    Defendant's Motion for Summary Judgment is **GRANTED** as to the exemption from production of all other information withheld by the various governmental components and referenced in the Memorandum in Support of Defendant's Motion for Summary Judgment (Doc. No. 22), Defendant's Reply Memorandum in Support of Its Motion for Summary Judgment (Doc. No. 33), and the declarations and indexes attached to both of these documents (Doc. Nos. 22-1 through 22-19; 33-1 through 33-5);

3.    Plaintiff's Motion for Summary Judgment is **GRANTED** as to his request that Defendant correct its administrative error, and **DENIED** as to all other issues raised.

4.    **IT IS FURTHER ORDERED** that Defendant shall file with the Court within thirty (30) days one or more detailed declarations or affidavits describing the searches conducted by the Joint Detention Group, the Joint Intelligence Group, the Joint Medical Group, and the Staff Judge Advocate.  These declarations or affidavits should include the following information for each component:

    a.    what record systems, including email systems, if any, the component did not search;

    b.    the types of records contained in any record systems that were not searched;

    c.    the record systems in which video or audio records are stored;

    d.    a non-conclusory explanation as to why any systems were not searched;

    e.    whether the record system that was searched in response to Plaintiff's FOIA request was the only possible place that responsive records are likely to be located, or alternatively whether there exist other record systems that are likely to contain information responsive to the request; and

    f.    any other information that will assist the court in determining the reasonableness of the searches at issue.

5.    **IT IS FURTHER ORDERED** that Defendant shall file, unredacted and under seal of the Court for in camera review, the Joint Medical Group records previously provided to Plaintiff that mention in any way the method for securing or restraining patients during the "certain medical procedures" of which the Thomas Declaration speaks.  Defendant shall strictly limit the documents filed to those documents that mention the securing or restraint of patients during these procedures.

**SO ORDERED**.

Signed: May 6, 2010

Robert J. Conrad, Jr.
Chief United States District Judge